## Commonwealth v. York Water Co.

*James J. Logan* and *John T. Logan,* for Commonwealth.
*Kain, Kain & Kain,* for York Water Company.

GROSS, P. J., O. C., specially presiding, September 9, 1939.—Pursuant to section 9 of the Act of June 25, 1937, P. L. 2063, at the suggestion of the Department of Revenue of the Commonwealth, the Attorney General, by his petition filed December 20, 1938, applied to this court for an order upon York Water Company, York, Pa., directing it to pay into the State Treasury to the credit of the Commonwealth, without escheat, in conformity with the said act of assembly, certain dividends declared to stockholders, and unclaimed for six or more successive years prior to January 1, 1938, where funds have been provided by the company for the payment of the same; and also for the payment into the State Treasury of certain customers' advances or deposits held by said company, and under the terms of the deposit agreement due and owing to the person depositing the same and unclaimed by said person for six or more successive years prior to January 1, 1938.

The petition is based upon a report filed on January 31, 1938, by said York Water Company, pursuant to section 3 of the act of assembly aforesaid, and has a schedule marked exhibit "A" attached thereto, in item 1 of which unpaid dividends to various stockholders are claimed in the total sum of $139.15, and in item, irregularly marked, no. 3 thereof, various customers' advances or deposits are claimed in the total sum of $1,425.

The answer filed by York Water Company, respondent, on January 2, 1939, sets forth that petitioner erroneously

averred, in item 1 of exhibit "A" to the petition, that the amount of unpaid and unclaimed dividends is the sum of $139.15, whereas the correct amount, as reported by respondent, is the sum of $139.65, but, since the filing of its report, dividends have been paid to stockholders as follows: Samuel Ferree, $1; F. W. Logan, $0.65, and Grier Hersh, $3.75, totaling $5.40, which amount must be deducted from the sum of $139.65, leaving the true and correct amount of unpaid and unclaimed dividends the sum of $134.25 (erroneously stated in the answer as $133.75), the disposition of which respondent submits to the order of the court.

The answer, in numbered paragraphs, further sets forth as follows:

"7. As to item no. 3 set forth in the schedule attached to the petition the company does not admit that the amounts therein contained are, under the terms of the deposit agreements, due and owing to the person or company who deposited the same, although they have been unclaimed for six or more successive years for the reasons hereinafter set forth.

"8. The deposits enumerated in said item no. 3 were made under rule 49 of the rates and rules of the company, P. S. C. Pa., no. 4, issued November 30, 1925, effective January 1, 1926, duly filed and posted in accordance with The Public Service Company Law of July 26, 1913, P. L. 1374, of the Commonwealth of Pennsylvania, which rule is as follows:

" '49. A charge of $10 for each brick house and $5 for each frame house to be built will be collected on account of the charges for water supplied, from all persons applying for a supply of water for building purposes, before taps are made, and the excess, if any, above the established rates for building purposes will be returned when the building is completed, or the balance due, if any, collected from the consumer. No water will be turned on for use in the building until the building is ready for occupancy

and the water fixtures have been inspected by the company.'

"The building and construction rates for water consumed in building were governed by the quantities of building materials which went into the erection of the respective structures as set forth in said rates and rules, and rule 6 thereof provided as follows:

" '6. Consumers shall make a full return of the uses of the water under any application within ten days after the completion of the work, and no fixture not specified in the application shall be installed. In case of failure to comply with this rule the water may be turned off until it is complied with.'

"9. In its 'Report of Moneys and Property Subject to Escheat' made January 31, 1938, the company reported that no moneys were due under item no. 3 and in the schedule intended to support said item set forth as follows:

" 'Under the rules of the company prospective builders were required to make deposits to cover costs of water used in building operations. Certain persons from time to time made such deposits but failed to proceed with the building alleged to have been in their contemplation. The names, dates, locations, and amounts are shown in exhibit "A", hereto attached. Certain other persons erected their buildings but failed to report back to the company, as required by its rules, the quantities of material which went into their buildings, although such reports were required in order that the company might refund any over-payment or collect any under-payment. The names, dates, locations, and amounts are shown in exhibit "B", hereto attached.

" 'By reason of the failure of these depositors to make report of their nonbuilding or of their building, the company is not in position to admit that the amounts deposited are due to the respective depositors but makes this report in order to afford information to the Department of Revenue, leaving it to further determination as to whether the

amounts so shown, or any of them, have remained due to the respective depositor for six years or more.' "

Petitioner, in item no. 3 of the exhibit to the petition, in making up the sum of $1,425, consolidated the respondent's exhibits "A" and "B" attached to its report and by so doing has somewhat confused the issue. However, since respondent's report has been filed, the answer avers that it refunded all amounts deposited by prospective builders who failed to erect buildings, except to those persons specifically named in the answer, aggregating the sum of $60, and the answer further avers that, since the filing of its report, it adjusted the deposits made with all consumers who erected buildings and had failed to make the returns required by the rules and rates of the company, except those specifically named in the answer, aggregating the sum of $75.

With respect to the item of $60, respondent submits itself to the order of the court, but suggests in its answer "that the right of the consumer to demand the return of such deposit and the consequent liability of the company to refund the same in whole or in part depends upon the interpretation of the rates and rules of the company, and is a matter solely within the jurisdiction of the Pennsylvania Public Utility Commission", and that this court has no jurisdiction to make any order with respect thereto "until the respective rights and liabilities as between depositor and company have been determined by the Pennsylvania Public Utility Commission".

With respect to the item of $75, respondent avers in its answer "that the depositors have not had the right to demand the return of the respective deposits in whole or in part by reason of the fact that they failed to make return of the quantities and materials which went into their respective buildings and that, therefore, the said moneys are and have been due and payable to the company as its proper, lawful tariff charge for water, and that the said amounts are and should be a part of the general revenue of the company, not due to the depositors and not subject

to escheat. In any event the right of the consumer to demand the return of such deposit and the consequent liability of the company to refund the same in whole or in part depends upon the interpretation of the rates and rules of the company and is a matter solely within the jurisdiction of the Pennsylvania Public Utility Commission", and that this court has no jurisdiction to make any order with respect thereto "until the respective rights and liabilities as between depositor and company have been determined by said commission".

No replication was filed.

There is no controversy concerning the facts averred in the petition and the answer and the court is required to accept the averments of facts in both as true. Questions of law only are at issue.

The petition claims two groups of moneys: (1) Unclaimed dividends of stockholders; and (2) unclaimed deposits of consumers.

The facts show that there are really three groups: (1) Unclaimed dividends of stockholders; (2) deposits made by consumers on account of prospective water rents to be incurred in buildings which were never erected; and (3) deposits made on account of buildings which were erected and as to which the builders never made any report and which the company claims as current revenue. Each group will receive our separate consideration.

The constitutionality of the Act of 1937, supra, upon which this proceeding is based, has not been, nor do we think that it could be successfully, raised. Its validity, in our opinion, is well settled in favor of the Commonwealth in the case of Germantown Trust Co. v. Powell, 265 Pa. 71, where the constitutionality of the Act of June 7, 1915, P. L. 878, in many respects similar to this act, was upheld, and, also, in Commonwealth v. Dollar Savings Bank, 259 Pa. 138, where the constitutionality of the Act of April 17, 1872, P. L. 62, was before the court for consideration. We also refer to the case of Commonwealth v. Union Trust Co., 75 Pitts. 824, where the Act of May 16, 1919,

P. L. 177, as amended by the Act of April 21, 1921, P. L. 211, paralleling the act invoked in this proceeding, was held to be constitutional.

The question, therefore, before the court is: To which of the above groups, if any, does the act of assembly apply?

With respect to group number one, unclaimed dividends in the corrected amount of $134.25, section 3 (a) of the act clearly requires every company to make a report of dividends or profits declared by it to any stockholders and unclaimed for six or more successive years where funds have been provided by the company for the payment of the same. Counsel for the company, in its brief submitted, does not contend that the Commonwealth has no right to claim these dividends, but does contend that it is required to pay over to the State Treasury only the corrected amount now in its hands. We are of the opinion that these unclaimed dividends come within the clear purview of the act of assembly, but that the company is required to pay only the corrected amount thereof. An order will be made accordingly.

As to the second group, amounting to $60, being moneys deposited by prospective builders who have failed to erect buildings, section 3 (a) (2), of the act, provides that the company shall make a report of any and all customers' advances or deposits held by it, and under the terms of the deposit agreement due and owing to the person or company depositing the same, and unclaimed by said person or company for six or more successive years.

The company makes no claim to have any property rights in this item of $60, and in its answer admits inferentially that the several depositors are entitled to it. No claim has been made by any of such depositors for more than six successive years, and, therefore, the act of assembly seems to clearly apply to this group. The company, however, contends that said deposits were made under the rates and rules of the company, made by it with the consent and approval of the Public Service Com-

mission, which has been succeeded by the Public Utility Commission, and that this court has no jurisdiction to make any order with respect thereto or to the payment thereof, until the respective rights and liabilities as between depositor and company have been determined by said commission. It is a sufficient answer to the company's contention to say that there is no dispute between the company and the depositors with respect to the rights of either to the funds in this group. The company makes no claim to any part of these funds and if any of such depositors has any just claim to any part thereof, his rights are fully protected by section 10 of the act, authorizing refunds by the Commonwealth.

We fail to see that the rates and rules of the company have any bearing on the question involved with respect to this second group, because the legislative enactment is clearly applicable, rises above, supersedes, and sets aside any rule or regulation adopted or promulgated with the approval and consent of said company.

The third group, representing amounts deposited by consumers who erected buildings and failed to make the returns required by the rates and rules of the company, aggregating the sum of $75, is an entirely different matter. The company claims, and with good grounds, to have property rights in this particular fund. It furnished water to the said depositors or consumers in some quantity for which it is, under the general law of contracts, entitled to be paid, and under the rules of the Public Service Commission, now the Public Utility Commission, must be paid, as it, being a public service corporation, is not permitted, under the determined policy of the Commonwealth through said commission, to furnish free water to any person.

To direct the payment of this item into the State Treasury might impair the obligation of the contract between the company and the depositors and deprive the company of its just compensation for water furnished to them. At least, this court has no way of knowing that it would

not do so until a final settlement or adjustment has been made between the company and such depositors.

The argument that the company should have made a prompt settlement with this class of depositors has some merit, but we know of no compelling duty devolving upon the company to have done so. The failure to have adjusted these accounts lies as heavily upon the depositors as upon the company. This court is not now called upon to make any such adjustment.

Under section 3(a) (2) of the Act of 1937, the funds accumulated in the hands of the company, under the terms of the deposit agreement, must be "due and owing to the person or company depositing the same". We submit that under the undisputed facts of this case it is not shown that all or any part of the funds in the third group are due and owing to said depositors and, therefore, the act of assembly upon which this proceeding is based is not applicable and the prayer of petitioner must be refused as to this group.

We accordingly enter the following decree:

And now, to wit, September 9, 1939, this case having come on for hearing on petition and answer and the proceedings being in conformity with the Act of June 25, 1937, P. L. 2063, relating to the subject, the prayer of the petition is granted as to unpaid and unclaimed dividends (group number one), in the sum of $134.25, and deposits of prospective builders, who failed to erect buildings (group number two), in the sum of $60, and it is ordered, decreed, and directed that The York Water Company, respondent, pay said two items, without escheat, into the State Treasury, through the Department of Revenue of this Commonwealth, pursuant to the act of assembly aforesaid, and as to group number three, representing deposits by consumers who erected buildings and failed to make the returns required by the rates and rules of the company, in the sum of $75, the petition is dismissed.

It is further directed that the costs of this proceeding be paid by the Commonwealth of Pennsylvania.

An exception is granted to each of the parties to the action of the court in this regard.