## PROVIDENT INSTITUTION FOR SAVINGS *v.* MALONE, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 151. Argued April 26, 1911.—Decided May 29, 1911.

The State has power to legislate in regard to the preservation and disposition of abandoned property and to establish presumptions of abandonment after lapse of reasonable period. *Cunnius* v. *Reading*, 198 U. S. 454.

A statute directing that savings banks turn over to the proper state officers money in accounts inactive for thirty years and where the

depositor cannot be found, with provisions for the payment over to the depositor or his heirs on establishment of right, does not deprive savings banks of their property without due process of law and is not a denial of equal protection of the law because it applies only to savings banks, the classification not being unreasonable; and so held as to the statute of Massachusetts to that effect.

The question of whether a statute allows a depositor or his heirs a lower rate of interest on a deposit turned over to the State as abandoned than allowed by the bank amounts to a deprivation of property without due process of law within the Fourteenth Amendment cannot be raised by the bank as against the State.

There is a special reason for protecting depositors of savings banks and there is a difference between them and deposits in other banks that affords a reasonable basis for classification in legislation.

Whether the State can require payment of accounts in savings banks without production of the pass-book and the rights and relations of parties arising out of the charter and contract of deposit are to be determined by local law and do not present Federal questions giving this court jurisdiction under § 709, Rev. Stat.

In 1907 the General Court of the Commonwealth of Massachusetts passed an act providing that deposits in savings banks which had remained inactive and unclaimed for thirty years, and where the claimant was unknown or the depositor could not be found, should be paid to the treasurer and receiver general.

Under this statute, which is copied in the margin,[1] the

--------------------------------------------------

[1] Sec. 56. The probate court shall, upon the application of the attorney-general, and after public notice, order and decree that all amounts of money heretofore or hereafter deposited with any savings bank or trust company to the credit of depositors who have not made a deposit on said account or withdrawn any part thereof or the interest, or on whose passbooks the interest has not been added, which shall have remained unclaimed for more than thirty years after the date of such last deposit, withdrawal of any part of principal or interest, or adding of interest on the passbook, and for which no claimant is known or the depositor of it cannot be found, shall, with the increase and proceeds thereof, be paid to the treasurer and receiver general, to be held and used by him according to law, subject to be repaid to the person having and establishing a lawful right thereto, with interest at the rate

attorney general on May 5, 1908, filed in the Probate Court of Suffolk County a petition, setting out the names and last known addresses of 226 persons who had deposit accounts ranging from $1 to $4,284 in the "Provident Institution for Savings in the Town of Boston." He alleged that for more than thirty years no part of the principal or interest had been withdrawn, no interest had been added upon any of the passbooks and no additional deposits had been made on any of the accounts; that no claimant for any of said deposits was known, and that the depositors could not be found. He thereupon prayed that the court would order the said sums of money, with the increases thereof, to be paid over to the treasurer and receiver general of the Commonwealth. A copy of the petition was served on the bank, and a citation, addressed to the depositors, was published once in each week for three successive weeks in two newspapers in Boston, requiring them each to show cause on July 16, 1908, why the prayer of the petition should not be granted.

The Savings Bank alone answered. It admitted the allegations of the petition. It averred, however, that when each deposit was made, an agreement was signed by which the by-laws of the bank made in pursuance of the charter granted December 11, 1816, was assented to by the depositor. These by-laws provided that regular semi-annual dividends of four per cent should be declared on all deposits of $5 and over, and should be added to the principal; that no dividends should be paid on sums above $1,600; that no money could be withdrawn without the production of the passbook, and that by a vote of the

of three per cent per annum from the time when it was paid to said treasurer to the time when it is paid over by him to such person.

SEC. 57. Any person claiming a right to money deposited with the treasurer and receiver general under the provisions of either of the two preceding sections . . . may establish the same by a petition to the superior court. . . .

trustees they might dissolve the institution at any time and divide the whole property among the dispositors in proportion to their respective interests therein.

- The bank contended that the act requiring deposits to be paid over to the receiver general deprived persons of their property without due process of law and also impaired the obligation of contracts. After hearing, the Probate Court directed the bank to pay over and transfer to the treasurer and receiver general of the Commonwealth the amounts deposited by the persons named in the petition. On appeal that order was affirmed by the Supreme Judicial Court of Massachusetts. 201 Massachusetts, 23; S. C., 86 N. E. Rep. 912.

*Mr. John C. Gray*, with whom *Mr. William Ropes Trask* and *Mr. Roland Gray* were on the brief, for plaintiff in error.

*Mr. Dana Malone*, with whom *Mr. Fred. T. Field* was on the brief, for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Massachusetts statute as to abandoned funds in savings banks only applies where the owner cannot be found. In the nature of the case, therefore, no depositor could except to the judgment of the Probate Court which directed the money to be turned over to the treasurer; and, it is claimed that as the Bank does not represent the depositors, it cannot be heard to raise the objection that their property has been taken without due process of law. *Hatch* v. *Reardon*, 204 U. S. 152, 160. This may be true, except in so far as its rights are involved in those of the depositor. Savings banks are maintained in the expectation that the deposits may, for years, remain uncalled

for, to the mutual advantage of bank and customer. So that if the statute had provided that the money should be paid over to the receiver-general if the owner, after a short absence, could not be found, or if the account remained inactive for a brief period, a very different question would be presented from that arising under an act which deals with absence and non-action so long continued as to suggest that the law of escheats or of lost property might be enforced. This, however, is not a statute of escheats, since it does not proceed on the theory that the depositor is dead, leaving no heirs. It does not purport to dispose of lost property, but deals with a deposit the owner of which, though known, cannot be found. The act is like those which provide for the appointment of custodians for the real and personal property of an absentee.

In this case though the money is on deposit with a bank, which has faithfully kept its contract, yet the statute proceeds on the general principle that corporations may become involved, or may be dissolved; or that, after long lapses of time, changes may occur which would require someone to look after the rights of the depositor. The statute deals with accounts of an absent owner, who has so long failed to exercise any act of ownership as to raise the presumption that he has abandoned his property. And if abandoned, it should be preserved until he or his representative appear to claim it; or failing that, until it should be escheated to the State. The right and power so to legislate is undoubted. *Cunnius* v. *Reading*, 198 U. S. 458.

The statute here is reasonable in its terms and is so framed as to work injustice to no one. It only applies to cases where no deposit has been made, no interest added on passbook, no check drawn against the account, for thirty years, and where no claimant is known and the depositor cannot be found. Before the money can be turned over to the receiver general proceedings must be

instituted in the Probate Court, and, under the decision of the Supreme Court of the State, personal notice must be given to the bank and citation and notice, usual in the Probate Court, published, so as to give the depositor, if living, and his heirs, if dead, opportunity to appear and be heard. Even then the property is not escheated, but deposited with the treasurer to hold as trustee for the owner or his legal representatives, to whom it is payable when they establish their right.

It is true that the rate of interest paid by the State is not the same as that paid by the bank—as to sums under $1,600 it is less, and as to those over $1,600 it is more. But this is a matter with which the plaintiff in error is not concerned and can arise only between the State and the claimant when he asserts a right to property long neglected and apparently abandoned.

But the bank insists that there has been no abandonment; that the money is in safe hands where it was originally left, under by-laws which contemplated that the deposit might remain in the bank without interest on sums over $1,600 until the corporation was dissolved. It contends that to deprive it of the benefit of such deposits is to take property without due process of law.

But while there was a possibility that the money might so remain the bank had no right to require that it should be so left. Neither the charter nor the by-laws create anything in the nature of a tontine, under which, on dissolution of the corporation, the then depositors would receive the money of those absent and unknown. On dissolution the shares of a depositor, who could not be found, would be paid over to his legal representative, who might be an administrator in case his death was established, or a guardian, in case of mental incapacity, or a trustee in bankruptcy in case of insolvency, or a representative appointed under statutes applicable to abandoned property. But it is not necessary to wait for the dissolu-

tion of the bank. If the facts warrant it a legal representative can be appointed at any time, with all the rights incident to such appointment, including that of withdrawing the funds and holding them for the true owner when he shall establish his claim.

There is nothing unequal or discriminatory in making the act applicable only to abandoned deposits in a savings bank. The classification is reasonable. Deposits in savings banks are made in expectation that they may remain much longer uncalled for than is usual in deposits in other banks. This fact makes savings deposits all the more likely to be forgotten and abandoned. And as the depositors are often wage-earners, moving from place to place, there is special reason for intervening to protect their interest in this class of property in banks as to which the State's supervisory power is constantly exercised.

The other questions as to payment without the production of the passbook, the rights and relations of the parties arising out of the charter and contract of deposit present no Federal question. The statute does not violate the Constitution of the United States. The judgment is

*Affirmed.*